Carolyn TICE and Larry Tice, Minors, by Jack Kelly, Their Guardian and Curator, and Margo Tice and Deborah Kay Tice, Minors, by Henry Tice, Their Guardian and Curator, and James R. Tice, a Minor, by Nadene Kackley, His Next Friend, Appellants,

v.

Vernon J. MILNER, Respondent.

No. 45861.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1957.

Motion for Rehearing or for Transfer to Court en Banc Denied Jan. 13, 1958.

John D. Hasler, St. Louis, Robert W. Hawkins, Caruthersville, McHaney & McHaney, Jones & Jones, Kennett, for appellants.

Blanton & Blanton, Harry C. Blanton, Sikeston, Evans & Dixon, William W. Evans, St. Louis, for respondent.

BARRETT, Commissioner.

On April 2, 1953, James E. Tice and his wife, Maxine, were killed when Mr. Tice's 1940 Ford automobile was involved in a collision with a 1952 Oldsmobile automobile on Highway 84 in Dunklin County. According to the allegations of the petition, the Oldsmobile was being driven by Montrose T. Morrell, who also died as the result of injuries received in the collision, but under the direction and control of its owner, Vernon J. Milner, or, it was charged, was being operated in the pursuit of a "joint enterprise" upon which Morrell and Milner had embarked. James and Maxine were survived by four minor children, Carolyn, Larry, Margo and Deborah Kay, and upon the deaths of their father and mother Jack Kelly became the duly appointed guardian and curator of Carolyn and Larry and Henry Tice became the guardian and curator of Margo and Deborah Kay. The deceased Morrell was a resident of Tennessee and the guardians, seeking to take advantage of V.A.M.S. § 537.020 (as it was then written and enacted), caused the Probate Court of Dunklin County to appoint W. G. Wicker as Morrell's "personal representative." On March 30, 1954, the two guardians, on behalf of their minor wards, instituted an action in the Circuit Court of Dunklin County, in two counts, against Morrell's "representative" and Milner to recover damages for the negligent, wrongful death of their

father and mother. Wicker, Morrell's personal representative, was served with process in Dunklin County and Milner was served with process at the place of his residence, in the City of St. Louis. Morrell's representative and Milner filed separate motions to quash the service of summonses and to dismiss the petition, Morrell's representative alleging that Morrell was a resident of Tennessee at the time of the fatal collision and that service of process upon his alleged representative under V. A.M.S. § 537.020 was unconstitutional. Milner alleged and relied upon Morrell's non-residence and the unconstitutionality of the statute under which he was served and the fact that he (Milner) was a resident of the City of St. Louis, had not been served with process in Dunklin County, and that personal service upon him in St. Louis was unauthorized and invalid. Morrell's representative then took a change of venue from the regular judge of the circuit court and upon the transfer and designation of another judge, the plaintiffs dismissed their action in Dunklin County and accordingly an order of dismissal "without prejudice" was entered.

Thereafter, on January 30, 1956, the guardians, having instituted the first suit in Dunklin County within one year of the death of James and Maxine and relying upon the suspension or savings clause in the statute limiting the action to one year, "that if any such action shall have been commenced within the time prescribed in this section, and the plaintiff therein take or suffer a nonsuit * * * such plaintiff may commence a new action from time to time within one year after such nonsuit suffered" (V.A.M.S. § 537.100), instituted this second action in the Circuit Court of the City of St. Louis against Vernon J. Milner alone. Morrell's representative was not made a party defendant and there was, of course, no effort to join or serve Morrell's administrator, or anyone else as his representative, with process. Milner was personally served with process in the City of St. Louis, the place of his residence. In

addition to the four minors represented by their guardians, James Tice was survived by another son, eleven years of age, by a previous marriage and, being unable initially to secure his mother's consent to join him as a plaintiff, the guardians made him a party defendant as to count one of this suit. Subsequently his natural mother petitioned for leave to join as a plaintiff and prosecute the action on his behalf; accordingly the action was dismissed as to him and an amended petition was filed in which his mother as next friend joined with the guardians of the four other children as to count one for their father's wrongful death.

In his answer and motion to dismiss the action in St. Louis Milner set forth or admitted the facts of the Dunklin County action but charged that the action was of no legal effect as far as he was concerned and specifically charged that it was wholly insufficient to suspend the running of the statute of limitations. He charged that the service of process upon him in that suit was unauthorized and invalid and that the Circuit Court of Dunklin County did not acquire jurisdiction of his person. He set forth the facts concerning the appointment and service of process upon Morrell's representative and alleged that the statute under which the appointment was made and process served was unconstitutional and that, therefore, there was no venue and no jurisdiction over the persons of either of the defendants in Dunklin County. For these reasons he asserted that the action in Dunklin County was "void, illegal, invalid, and of no effect," the consequence being that the action in St. Louis was barred by the one-year statute of limitations. In addition, Milner charged that the plaintiffs knew and were informed as to the fact of his St. Louis residence and for that reason the plaintiffs were guilty of the grossest kind of negligence in filing their original action in Dunklin County and for that reason the statute of limitations was not suspended so as to authorize the filing of the second suit in St. Louis. In his motion to dismiss

the plaintiffs' petition he set forth the fact that James R. Tice was not a party to the first suit and, therefore, claimed that all the parties were barred by limitation as to the first count for their father's wrongful death. The trial court sustained the defendant Milner's motion for the reason that "the claims are barred by limitations," and the plaintiffs have appealed from the ensuing order and judgment.

The appellant plaintiffs contend, since the original action was instituted within the required year of its accrual and a voluntary nonsuit taken, that they were within the savings clause of the statute and entitled to "commence a new action * * * within one year after such nonsuit suffered" (V.A.M.S. § 537.100), and that the first count of their petition was not barred by their belatedly adding James R. Tice as a party. In his brief here the respondent Milner again asserts that the Circuit Court of Dunklin County did not acquire jurisdiction of his person by service of process upon him in St. Louis, and hence, it is said, "never acquired venue." It is again urged that the statute under which Morrell's representative was appointed and served was unconstitutional and did not permit the Circuit Court of Dunklin County to "acquire venue or jurisdiction" over his person. It is argued, in all the circumstances, that as to him the Dunklin County action was negligently brought and, therefore, could not be relied upon as suspending the running of the statute of limitations. And, finally, it is contended that the adding of James R. Tice in the St. Louis suit was fatal to his rights and to that of his codefendant half sisters and half brother under count one.

As a preliminary matter certain distinctions must be carefully noted and kept in mind. Neither the plaintiffs nor the trial court insisted upon the Circuit Court of Dunklin County's retaining jurisdiction of the cause. The question here is not whether prohibition should issue to confine a court to a cause within its jurisdiction, or to a cause in which it had properly acquired jurisdiction of the persons of the parties; it is assumed that the action in Dunklin County was subject to being abated for lack of proper service of process and, therefore, for lack of proper venue. State ex rel. Bartlett v. McQueen, 361 Mo. 1029, 238 S.W.2d 393; State ex rel. O'Keefe v. Brown, 361 Mo. 618, 235 S.W.2d 304; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889; State ex rel. Minihan v. Aronson, 350 Mo. 309, 165 S.W.2d 404. On the other hand, this is a transitory tort action, the alleged negligent accident occurred in Dunklin County, and the Circuit Court of Dunklin County had jurisdiction of the subject matter of the action and if proper service of process could have been obtained would have had jurisdiction of the parties. Neither are we concerned here with whether the action for wrongful death survived, either by reason of the wrong party's initiating it or for failure of the children to timely appropriate and file it; this action admittedly survived to the Tices' minor children and they, through their guardians and curators, were the proper parties to institute and prosecute it. Compare: Fair v. Agur, 345 Mo. 394, 133 S.W.2d 402; Johnson v. Frank, 354 Mo. 767, 191 S.W.2d 618. If the suit in Dunklin County was "commenced within one year after the cause of action shall accrue" and thereafter there was a voluntary nonsuit, the fact of the first suit interrupted or suspended the statute of limitations and the plaintiffs could "commence a new action * * * within one year" after the nonsuit. V.A.M.S. § 537.100; 34 Am.Jur., Sec. 247, p. 202; Martinez v. Missouri Pac. R. Co., Mo., 296 S.W.2d 90. Nor here is there any question as to whether the disposition of the Dunklin County suit was a voluntary nonsuit, "a dismissal without prejudice" (V.A.M.S. § 510.150); the respondent tacitly concedes the fact. Compare, however, the cited cases: Schrader v. Burkel, Mo., 260 S.W. 63; Crispin v. St. Louis Public Service Co., 361 Mo. 866, 237 S.W.2d 153.

In any event the Dunklin County suit was certainly not disposed of on its merits and it was not dismissed with prejudice as was the fact in Conrad v. McCall, 205 Mo.App. 640, 226 S.W. 265. The key word in the statute is "commenced" and the basic question here is whether the Dunklin County action was "commenced," if so the fact suspended the running of the statute and the plaintiffs were entitled to "commence" a second action in a court of appropriate venue, with jurisdiction of the subject matter, after acquiring jurisdiction of the person by proper service of process as has admittedly been done in the latter action.

■ Although he does not brief and argue the point other than inferentially, the respondent says that the record fails to show the residence of any of the plaintiffs in Dunklin County. However, no such ground of attack was made upon the action in the Dunklin County case or in his answer or motion in this case; no issue was made of the fact in this case and there was no evidence upon the subject by either party, hence it may have been assumed or tacitly conceded by the parties. But, the petitions in both cases allege that Kelly and Henry Tice were the duly appointed, qualified and acting guardians and curators of Carolyn, Larry, Margo and Deborah Kay, the minor children of James and Maxine. It is not urged or said that the guardians were not appointed by the Probate Court of Dunklin County. In this state of the record it may be assumed that only the court of the residence of their father and mother and of their domicile would initially assume the jurisdiction and appoint guardians and curators for these four children. Const.Mo. Art. V, Sec. 16, V.A.M. S.; V.A.M.S. §§ 473.010, 475.090; 39 C. J.S. Guardian and Ward § 10, p. 21.

■ As indicated in the beginning, the alleged negligent deaths occurred in Dunklin County and the Circuit Court of Dunklin County had jurisdiction of the subject matter. A petition, admittedly stating a cause of action, was filed in that court and not only was summons issued, summons was served upon both parties— invalid though it may have been. It is not claimed that there was no service of process whatever upon the defendants, or that it was not timely served; on the contrary, there was process and the defendants did something about it, they did not hazard the consequence of a default. The point is that the limitation statute does not say that there must be valid service of process either to comply with the statute or to interrupt its running; the statute says that every such action "shall be *commenced*" within one year of its accrual and if timely "commenced" and a nonsuit suffered a new action may be commenced within a year of the nonsuit. And, the filing of a petition and the issuance of a summons, even though not timely served, is the commencement of an action within the meaning of the statute of limitations. McCormick v. Clopton, 150 Mo.App. 129, 130 S.W. 122; Gosline v. Thompson, 61 Mo. 471. If service or execution of process is unnecessarily and unduly delayed the fact may bear upon the plaintiffs' vigilance and negligence in prosecuting the action, but the filing of a petition and the issuance of process is the commencement of an action within the meaning of the statute of limitations. Mayne v. Jacob Michel Real Estate Co., 237 Mo.App. 952, 180 S.W.2d 809.

In connection with the appointment of Morrell's representative and the service of process upon him, the first question immediately suggested is the extent or whether his codefendant, Milner, has the right to question the validity of the appointment and the service other than in so far as it may bear upon the plaintiffs' negligence in the institution and prosecution of the suit. 72 C.J.S. Process § 106, p. 1151; 1 C.J.S. Abatement and Revival § 8, p. 37. It has not been briefed and argued here and so the force of the point has not been fully explored, but it will be remembered that Morrell's representative, after filing

his motion to quash, took a change of venue from the judge of the Circuit Court of Dunklin County and in normal circumstances would have been deemed to have entered his appearance and have subjected his person to the jurisdiction of the court. Baisley v. Baisley, 113 Mo. 544, 21 S.W. 29; Mahan v. Baile, 358 Mo. 625, 216 S.W.2d 92, 94. The problem has not been explored but had he entered his appearance and subjected his person to the court's jurisdiction could the respondent Milner reasonably contend that no action had been commenced or that the voluntary nonsuit had not suspended the running of the statute? Again it would appear that this phase of the case may also bear upon the plaintiffs' negligence and not upon whether the action was in point of fact so commenced and dismissed as to toll the statute.

■ If these matters and suggestions do not entirely eliminate Milner's objections the only basis of his attack is and must be that he was a resident of St. Louis, was not served with process in Dunklin County, and could never have been properly served with process in any action other than one commenced in the City of St. Louis. In short, his attack is and must be that as to him there was no venue in the Circuit Court of Dunklin County—unless he entered his appearance to the action. And of this, as indicated, there can be no doubt (V.A.M.S. § 508.010; State ex rel. Bartlett v. McQueen, supra; State ex rel. Minihan v. Aronson, supra), but that does not necessarily mean that the commencement and dismissal of the action within the year did not suspend the running of the statute. True, the St. Louis Court of Appeals in Mertens v. McMahon, Mo.App., 115 S.W.2d 180, 183, indicates that there must have been "valid" service of process—at least "fraudulent or invalid process" is not permitted—to suspend the running of the statute. However, the court in that case was confronted with a different, vexing factual situation as indicated by the history of the case—see the leading case of Mertens v. McMahon, 334 Mo. 175, 66 S.W.2d 127, 93 A.L.R. 1285.

In addition, the Mertens case was carefully re-examined and distinguished in Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, 145 A.L.R. 1176. In connection with the Mertens case one other observation may not be entirely irrelevant; had there been "valid" service of process there would have been no problem in the first place. For what better reason would one legitimately take a nonsuit than the fact of his being in the wrong forum? In this connection, in Atlanta, K. & N. Ry. Co. v. Wilson, 119 Ga. 781, 786, 47 S.E. 366, 368, the Georgia court wisely observed; "If the plaintiff had brought her suit properly, there would have been no occasion to discontinue. When the reason for discontinuance appeared, or was determined by the court, the statute allowed a renewal for the very purpose of avoiding the result of the error. The mistake cannot, then, be relied on to prevent the right to renew. Unless the case is an absolute nullity, the defective or improper suit may be used to nurse the cause of action into full life in the proper form and forum."

Wente v. Shaver, supra, has been carefully re-examined, it is well reasoned and in its essentials governs this case in its entirety. There an administratrix first brought an action for the wrongful death of her decedent in the Circuit Court of the City of St. Louis. The automobile collision causing the decedent's death occurred in St. Louis County and the decedent resided in St. Louis County. Her administratrix and her counsel, mistakenly thinking that the defendant was a resident of the City of St. Louis, instituted the suit there and served the defendant with process there. The defendant was in fact a resident of St. Louis County and, upon entering a special appearance, her plea in abatement was sustained and the plaintiff took a voluntary nonsuit, thereafter instituting the action in St. Louis County. In the second suit the defendant claimed, the action in St. Louis County not having been instituted within one year of its accrual, that it was barred by the one-year statute of limitations,

V.A.M.S. § 537.100. The court exhaustively reviewed and distinguished the Conrad and Mertens cases and held, even though the process in the original action was unauthorized and invalid and the venue improper. that the first action had been commenced within the meaning of the statute and suspended the running of the limitation period and, therefore, the second action, commenced within one year of the dismissal, was not barred. This and related problems are considered in the following annotations: 27 A.L.R.2d 236; 145 A.L.R. 1185; 142 A.L.R. 1184; 132 A.L.R. 292.

Even so, if the first action was not commenced in good faith "the negligent bringing of a void action will *not* toll the statute of limitations *if the plaintiff's negligence be great enough.*" (The latter italics supplied.) Phillips v. Whittom, 354 Mo. 964, 968, 192 S.W.2d 856, 857. In that case the facts were carefully examined and it was held that plaintiff's counsel were so obviously negligent in instituting the first action in the wrong county as to preclude reliance upon the savings clause of the statute. The court, however, adhered to and purported to follow Wente v. Shaver in this and all other respects. In this action the plaintiffs were aware, from the beginning of Milner's St. Louis residence as indicated by the fact of their having process issued in Dunklin County and served on him in St. Louis. It may be that plaintiffs may not "gamble" upon finding and serving a defendant, here Milner, in the county where the plaintiffs reside, where the cause of action accrued and is instituted. However, in another action by Margo Tice (undoubtedly one of the plaintiffs in this action), Milner was successfully served with process in Dunklin County and eventually took a change of venue from the county. Who knows, except for the sensible and timely advice of alert counsel, whether he might have been served with process in this action in Dunklin County.

■ It is said that the statute under which Morrell's representative was served with process was unconstitutional, another circumstance demonstrating negligence in the filing and subsequent dismissal of the suit. The suit was filed on March 30, 1954, and it was not until September 13, 1954, that the service of process phase of the statute was declared unconstitutional in Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763. See also Crump v. Treadway, Mo., 276 S.W.2d 226. Process served under an unconstitutional statute is invalid, of course, but it certainly is not negligence to institute an action in reliance on a statute not then known or declared to be unconstitutional. Five months and fourteen days elapsed between the dismissal of the Dunklin County suit and the filing of the St. Louis suit, one year, four months and seventeen days after the statute was declared unconstitutional, but if the first action suspended the statute the plaintiffs had "from time to time within one year after such nonsuit" (V.A.M.S. § 537.100) in which to commence the second action (Douglas v. Thompson, Mo., 286 S.W.2d 833) and these delays would not demonstrate negligence. It is not necessary to detail every circumstance and factor and demonstrate the various permissible inferences, or to compare them factually with all the other cases; plaintiffs' counsel would probably concede, now, that they were not as diligent as they could have been, but in all the circumstances it may not be said that their negligence was "great enough" to deprive these plaintiffs of the right to a trial of their case on its merits. Wente v. Shaver, supra. Even in Krueger v. Walters, 238 Mo.App. 340, 179 S.W.2d 615, the cause was remanded for the purpose of permitting the plaintiff to show good faith, innocent mistake, and freedom from negligence in instituting her former suit. All the circumstances of this record considered, the trial court was in error in its view, for either of the reasons advanced here, that the plaintiffs' action was barred by the statute of limitations.

■ Likewise as to the addition of James R. Tice as a party to the first count of the second action, the test is whether

**704**

the addition of a party relates back or effects such a change in the original action as to avoid or not avoid the running of the statute of limitations. And, "There has been hardly a disagreement as to the right or effect of amendment bringing in an additional party plaintiff in cases where a cause of action for death has been brought by some, but not all, of the persons entitled to bring such action." Annotation 8 A.L.R. 2d 6, 23–27, 47; Slater v. Kansas City Terminal Ry. Co., Mo., 271 S.W.2d 581. The Missouri cases were recently collected and reviewed in Nelms v. Bright, Mo., 299 S.W.2d 483, and it was there justly and properly held, no prejudice to substantial rights of the defendant being shown, that a cause of action for wrongful death instituted and prosecuted by a minor daughter would be remanded by this court for the purpose of permitting an amendment adding a purposefully omitted minor brother.

The respondent filed a motion to dismiss the appeal because of the insufficiency of the appellants' brief and its obvious failure to meet the requirements of 42 V.A.M.S. Rule 1.08. The appellants have moved to amend the brief, inadequately we might add; nevertheless, as indicated in the course of this opinion, the brief is not so flagrantly deficient as to call for the imposition of the severe penalty of a dismissal and, therefore, the motion is overruled. Turner v. Mitchell, Mo., 297 S.W. 2d 458.

For the reasons indicated the order and judgment dismissing the plaintiffs' action is reversed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.